UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Criminal No. 6:15-CR-10-GFVT |
| ) | |
| v. ) | |
| ) | **MEMORANDUM OPINION** |
| JERRY LUKE, ) | **&** |
| ) | **ORDER** |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant Jerry Luke, charged with 1 count of Possession of Child Pornography 18 U.S.C. § 2252(a)(4)(B), has filed a motion to suppress evidence at his upcoming trial. [R. 39.] In the motion to suppress and supplemental briefing, Luke presents several alleged grounds for constitutional violations of his Fourth Amendment right against unreasonable searches and seizures. Consistent with local practice, this matter was referred to Magistrate Judge Hanly A. Ingram for a recommended disposition. Judge Ingram held a suppression hearing and arranged for extensive briefing of the issues by both parties. After thoroughly investigating Luke's claims, Judge Ingram recommended the Court deny Luke's motion to suppress in part and grant it in part. Specifically, Judge Ingram recommended that both warrants obtained in this case be found invalid. However, he recommended that the *Leon* good faith exception apply to save the search conducted pursuant to the second warrant. [R. 81 at 8]; *see United States v. Leon*, 468 U.S. 897 (1984). The Court agrees with Judge Ingram and, for the reasons set forth below, will OVERRULE Defendant's objections to Judge Ingram's Order and OVERRULE the Government's objections as moot.

# I

## A

The full factual background of this case is recounted in detail several times throughout the record. [*See, e.g.,* R. 39; R. 62; R. 72.] Accordingly, the Court focuses its factual summary on those facts that most pertain to Defendant Luke's and the United States's specific objections to the Magistrate's Recommended Disposition. The Court hereby incorporates by reference the full factual background as set forth in the Memorandum Opinion by Judge Ingram. [R. 72 at 2-11.] The facts that are most relevant to the Defendant's and the United States's objections are summarized as follows.

On January 15, 2013, Knox County Sheriff's Deputy Claude Hudson, Jr., received a call about a 16 year old missing juvenile female. [R. 72 at 2.] Based on a conversation between the juvenile and the juvenile's mother, Deputy Hudson came to believe that the juvenile was with the Defendant. [*Id*.] Hudson attempted to contact the Defendant, but the Defendant's cell phone appeared to be turned off. [*Id*.] Hudson went to the juvenile's high school to further investigate and confirmed with the juvenile's friend that the juvenile had been in contact with a "40 year-old man." [*Id*.] Hudson then went to the juvenile's friend's house who was staying at home that day and this friend provided him with the Defendant's cell phone number. [*Id*.] Based on the information Hudson had collected, and believing the juvenile was with the Defendant, he used cell phone location services from the Defendant's cell phone to determine his location. [*Id*.]

The following day, January 16, 2013, the juvenile's mother informed Hudson that the Defendant, whom the juvenile was assumed to be with, had a Commercial Driver's License and Hudson became fearful that the Defendant might try to leave the state with the juvenile. [R. 72 at 3.] Deputy Hudson decided to pursue a search warrant (The First Search Warrant) to search

the Defendant's residence for information related to where the missing juvenile might be located. [*Id*.] In the warrant, Deputy Hudson listed that he was looking for "any controlled substance and evidence of Trafficking," along with any types of items associated with those behaviors. [R. 39-2.] Additionally, the warrant described that Deputy Hudson was looking for "any property indicating child pornography or unlawful transaction with minors. [*Id*.] In a hearing held by Judge Ingram, Deputy Hudson admitted that the affidavit language he used to obtain The First Search Warrant was "broad" and based on "a template." [*See* R. 72 at 4.] Deputy Hudson indicated that he was "leaning" towards thinking the Defendant might possess child pornography because he had seen a picture of the 16-year-old juvenile and observed that she appeared much younger than she actually was. [*Id*.] However, Hudson did not know of any computer equipment in the Defendant's house when he sought The First Search Warrant. [*Id*.] Hudson explained during the hearing that he was looking for any type of unlawful transactions between the juvenile and the Defendant, including text messages or pictures that might be on a computer. [*Id*.]

Before Hudson executed The First Search Warrant, however, a Corbin Police Department officer located the Defendant's vehicle in the parking lot of a post office. [*Id*. at 5.] By the time Hudson arrived, the Defendant was in handcuffs in the back of the police cruiser. The Defendant was read his Miranda rights. [*Id*.] Law enforcement searched the Defendant's vehicle at the scene and found some pornographic magazines. [R. 72 at 6.] The juvenile was questioned and revealed that she had been to the Defendant's house and had sexual intercourse with him there. [*Id*.]

Later, Hudson, along with Deputy Keith Lawrence Liford, transported the Defendant from the Corbin Police Department to Knox County Jail. [*Id*.] During the transport, the

3

Defendant asked if he could stop at his house to feed his dogs and, since it was on the way to the jail, the Deputies permitted the stop. [*Id*.] The Defendant did not have a key to the house, Hudson and Liford permitted the Defendant to crawl through a window and the Defendant opened his front door to let the deputies in the house. [*Id*. at 7.] After entering the house, the officers performed a safety sweep. In the main living areas of the house, the officers readily observed an "unusual" amount of computer towers, external hard drives, and zip drives in addition to a cage that seemed to be constructed for humans. [R. 72 at 7.] After seeing these items, Hudson asked the Defendant if he could look around the house and the Defendant agreed. [*Id*.] In the bedroom, Hudson found a "briefcase with . . . leg shackles, a whip, [and] a choking collar." [*Id*.] In addition, Hudson observed several pornographic magazines that he described as depicting very young girls, though later Hudson admitted all the magazines he observed were legal and did not depict minors. [*Id*. at 8.]

When the Defendant finished tending to his dogs, the officers led him back to the police cruiser, where they had the Defendant sign a consent to search form. [*Id*.] The Defendant did not indicate any confusion about the form and did not object to signing it. [*Id*.] After signing the consent form, Hudson informed the Defendant that he did have a search warrant and he went over The First Search Warrant with the Defendant. [R. 72 at 9.] After the Defendant signed the consent to search form, Hudson reentered the home and seized two computer towers, including the hard drives, fifteen zip drives, two memory cards, two external hard drives, five cell phones, two film cameras, a handheld radio, and a VHS recorder with film. [*Id*.]

On January 17, 2013, Hudson pursued a second warrant (The Second Search Warrant) to investigate the seized items from the Defendant's home. The Second Search Warrant was more specific and it described that Hudson was looking for "Any memory within the [seized items] . . .

4

```
```
containing but not limited to child pornography." [R. 39-3.] Hudson explained he had probable cause to believe he would find child pornography on the seized items based on the Defendant's attraction to younger girls, as evidenced by running off with the juvenile in the present case. In addition, Hudson referenced the lawful pornographic magazines that seemed to depict young-looking girls. Hudson also testified that he believed he would find evidence of unlawful transactions with a minor on the computer equipment because he knew the juvenile had contacted the Defendant electronically in the past. [R. 72 at 10.]

## B

Pursuant to Federal Rule of Criminal Procedure 59(b) and 28 U.S.C. § 636(b)(1), any party may serve and file specific written objections to a Magistrate Judge's Recommended Disposition within fourteen days of being served with the Recommended Disposition. In order to receive *de novo* review by this Court, any objection to the Recommended Disposition must be specific. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986); *see also* Fed. R. Crim. Pro. 59(b)(3). A specific objection "explain[s] and cite[s] specific portions of the report which [counsel] deem[s] problematic." *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007). A general objection that fails to identify specific factual or legal issues from the Recommendation, however, is not permitted, since it duplicates the Magistrate's efforts and wastes judicial economy. *Howard v. Secretary of Health and Human Services*, 932 F.2d 505, 509 (6th Cir. 1991).

In his initial motion to suppress [R. 39] and his objection to the Magistrate Judge's Recommended Disposition [R. 83], Defendant Luke sets forth several grounds supporting suppression. In short, Defendant Luke asserts that both warrants procured by Hudson were invalid; that Luke did not give timely, knowing, and voluntary consent to search his residence;

that the seizure of the computer equipment was invalid; and, ultimately, that the *Leon* good faith exception should not apply to any evidence unlawfully seized. *See United States v. Leon*, 468 U.S. 897 (1984).

The Government also objected to the Magistrate Judge's Recommended Disposition. [R. 86.] The Government objects to the Magistrate Judge's finding that The Second Search Warrant obtained by Hudson was invalid and lacked probable cause.

Defendant Luke, through counsel, and the Government have stated several specific objections that relate to the motion to suppress. These objections are sufficiently specific to trigger the Court's obligation to conduct a *de novo* review. *See* U.S.C. § 636(b)(1)(c). The Court has satisfied that duty, reviewing the entire record, including the pleadings, the parties' arguments, relevant case law and statutory authority, as well as applicable procedural rules. For the following reasons, Luke's objections will be OVERRULED and his motion to suppress evidence will be DENIED in part and GRANTED in part. Additionally, the Government's objections will be OVERRULED as moot.

## II

### A

Though Luke makes two objections in his response to the Magistrate Judge's Recommended Disposition, the first objection becomes moot when the second objection is considered. Luke's first objection is that Judge Ingram's legal analysis should have stopped after finding the two warrants invalid. [R. 83 at 1.] Whether or not each warrant or instance of consent is valid or not has been thoroughly examined by Judge Ingram and this Court agrees with his findings. Both warrants are overbroad and invalid but the consent given by Jerry Luke at his residence was valid.

6

However, as Judge Ingram acknowledged, finding a warrant invalid does not necessarily result in the suppression of the evidence obtained from that invalid warrant. The ultimate issue in this case is whether the good faith exception found in *Leon*, 468 U.S. 897, applies to save The Second Search Warrant, the search of the computer equipment that revealed incriminating evidence against the Defendant. In fact, "[t]he Fourth Amendment contains no provision expressly precluding the use of evidence obtained in violation of its commands." *Leon*, 468 U.S. at 906.

Whether or not unlawfully obtained evidence should be suppressed is "an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct." *Id*. The good faith exception applies to save evidence unlawfully obtained except in four circumstances:

> (1) where the issuing magistrate was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth; (2) where the issuing magistrate wholly abandoned his judicial role and failed to act in a neutral and detached fashion, serving merely as a rubber stamp for the police; (3) where the affidavit was nothing more than a "bare bones" affidavit that did not provide the magistrate with a substantial basis for determining the existence of probable cause, or where the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where the officer's reliance on the warrant was not in good faith or objectively reasonable, such as where the warrant is facially deficient.

*United States v. Rice*, 478 F.3d 704, 712 (6th Cir. 2007).

Further, the suppression of evidence in accordance with the exclusionary rule "has been restricted to those areas where its remedial objectives are thought most efficaciously served." *Leon*, 468 U.S. at 908; s*ee also Herring v. United States*, 555 U.S. 135, 141 (2009). The exclusion of evidence must be appropriately applied to deter future misconduct by police, so "police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and

sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring*, 555 U.S. at 144. In fact, in all the years since the "Leon 's good-faith exception, [the court has] never applied the exclusionary rule to suppress evidence obtained as a result of nonculpable, innocent police conduct." *Davis v. United States*, 564 U.S. 229, 240 (2011) (internal quotations omitted). Courts should give unlawful searches conducted pursuant to a warrant adequate weight, as "[a] grudging or negative attitude by reviewing courts toward warrants . . . is inconsistent both with the desire to encourage use of the warrant process by police officers and with the recognition that once a warrant has been obtained, intrusion . . . is less severe than otherwise may be the case." *Massachusetts v. Upton*, 466 U.S. 727, 733 (1984).

  The exclusionary rule has been limited to cases of flagrant Constitutional violations. Seminal cases provide templates for the types of conduct that warrant use of the exclusionary rule. In *Weeks*, 232 U.S. 383, officers broke into the defendant's home and seized incriminating evidence and later returned with a U.S. Marshal to seize more evidence. Officers did not try to nor could they have obtained a warrant. *See Herring v. United States*, 555 U.S. 135 (2009) (summarizing various cases where the exclusionary rule has been applied). In *Mapp v. Ohio*, 367 U.S. 643 (1961)*,* officers forced open the Defendant's door, prevented her lawyer from entering, and showed her a false warrant in order to enter the house. After they entered the house, they handcuffed her and performed an unwarranted search. *See Herring v. United States*, 555 U.S. 135 (2009).

  Defense relies on *United States v. Hodson*, 543 F.3d 286, 287 (6th Cir. 2008), where the *Leon* good faith test was not applied to save a search. The search in *Hodson* was overturned because it was found that the officer did not act reasonably, according to the third *Leon* factor (" . . . where the affidavit was so lacking in indicia of probable cause as to render official belief in its

existence entirely unreasonable." *United States v. Rice*, 478 F.3d 704, 712 (6th Cir. 2007)). The *Hodson* court analyzed the third *Leon* factor by evaluating whether, "the faceless, nameless "reasonably well trained officer" in the field, upon looking at this warrant, would have realized that the search described . . .did not match the probable cause described . . .", making the search illegal. *United States v. Hodson*, 543 F.3d 286, 293 (6th Cir. 2008). *Hodson* is somewhat factually similar to the case at hand. In *Hodson*, the Defendant was apprehended by a Detective in an online chatroom. In a conversation with the Detective in the case, the Defendant admitted to having sex with his seven-year-old nephew and "expressed his desire to perform oral sex on the presumptive twelve-year-old boy (i.e., the Detective . . .) and his willingness to travel to New Jersey to do so." *United States v. Hodson*, 543 F.3d 286, 287 (6th Cir. 2008). Based solely on this conversation and a small amount of corroborating investigation (in which it was revealed the Defendant actually did not have a nephew), the Detective obtained a search warrant to look through the Defendant's computers for child pornography.

Turning to Luke's request for suppression, none of the four *Leon* factors that would favor suppression are present here. Deputy Hudson did not mislead the Magistrate who signed the warrants by giving, "information . . . the affiant knew was false or would have known was false except for his reckless disregard for the truth." *United States v. Rice*, 478 F.3d 704, 712 (6th Cir. 2007). Neither party contends that the "issuing magistrate wholly abandoned [her] judicial role and failed to act in a neutral and detached fashion, serving merely as a rubber stamp for the police." *Id*. The affidavit was not "a 'bare bones' affidavit that did not provide the magistrate with a substantial basis for determining the existence of probable cause," and the affidavit was not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id*. Lastly, "the officer's reliance on the warrant was [] in good faith [and]

9

objectively reasonable," and he had no reason to believe that the warrant was "facially deficient." *Id*.

Luke argues against the third and fourth factors warrant suppression, that it was not reasonable for Deputy Hudson to have relied on the warrant. However, the instant case bears no resemblance to the extreme cases where the exclusionary rule has been enforced. Deputy Hudson repeatedly attempted to obtain a valid warrant based on probable cause. Though he did not succeed in obtaining a valid warrant, Deputy Hudson nevertheless acted within his role as a police officer.

The unreasonable behavior described in *Weeks*, *Mapp*, and *Hodson*, where the exclusionary rule has been applied, are distinguishable from this case. Deputy Hudson's behavior clearly does not reach to the level of extreme violation of Fourth Amendment rights discussed above in seminal cases that have declined to extend the *Leon* good faith exception. Unlike in *Weeks* or *Mapp*, Hudson obtained two warrants and a verbal consent while on the Defendant's property. He was allowed into the house by the Defendant, rather than breaking in as in *Weeks* or *Mapp*.

Warranting more discussion, however, is how this case is distinguishable from *United States v. Hodson*, 543 F.3d 286, 287 (6th Cir. 2008). Though both cases deal with the same subject matter, they are distinguishable. The most significant difference between the cases is the amount of probable cause the officers had before they executed the search warrants on the computer equipment. The officers in *Hodson* based their search and seizure of the Defendant's computer equipment based solely on an online conversation a detective had with the Defendant in which the Defendant admitted to having sexual relations with his nephew, a minor. Later investigations revealed the Defendant did not even have a nephew, but the Detective proceeded

to obtain a search warrant and search Defendant's computer equipment.  In the instant case, Deputy Hudson had considerable more probable cause both to issue a warrant and to execute the warrant.  Deputy Hudson knew that the Defendant had had sexual relations with a 16-year-old who appeared much younger to the Detective.  Once Deputy Hudson entered the house, he saw various legal sex items and some pornographic magazines that, though he admitted were lawful, seemed to depict women that looked young to Hudson.  Putting all that information together, when he saw the computer equipment and the amount of external storage Defendant Luke possessed, it was reasonable for him to assume there might be child pornography or evidence of unlawful transactions with a minor on his computer.  This Court believes that "the faceless, nameless reasonably well trained officer in the field" would have reached the same probable cause conclusions as Deputy Hudson.  *Hodson*, 543 F.3d at 293 (internal quotations removed).

      Finally, the exclusionary rule is meant to deter future inappropriate police conduct.  Deputy Hudson was overly cautious and sought two separate warrants and also received verbal and written consent from the Defendant at his house.  Suppressing the evidence obtained from such warrants goes against the purpose of encouraging officers to seek warrants.  It's not clear any lesson would be taught by suppressing the evidence here or that police officer behavior would change as a result of suppression.  Detective Hudson sought a warrant each step of the way and a neutral and detached Magistrate signed those warrants.  Suppressing the evidence obtained from the search and seizure of the computer equipment found in Luke's house would not prevent future police misconduct and the evidence obtained from these faulty warrants should not be suppressed.

### III

In conclusion, the Court has conducted a *de novo* review as to Luke's and the Government's specific objections and has reviewed the Recommended Disposition for clear error as to Luke's and the Government's general objections. After careful thought, the Court determines that the *Leon* good faith exception to the exclusionary rule applies to save the search of the computer equipment that led to the incriminating evidence against Luke. The Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. Defendant Luke's objections to the Magistrate Judge's Recommended Disposition [R. 83] are **OVERRULED**;

2. The Government's Ojbection to Magistrate Judge's Recommended Disposition is denied as **MOOT**;

3. Luke's Motion to Suppress Evidence [R. 39] is appropriately **DENIED** in part and **GRANTED** in part in accordance with the Magistrate Judge's Recommended Disposition [R. 81] and Memorandum Opinion [R. 72]; and

4. The Court hereby **INCORPORATES** by reference Judge Ingram's Recommended Disposition [R. 81] and Memorandum Opinion [R. 72] as and for the opinion of the Court.

This 9th day of December, 2016.



Gregory F. Van Tatenhove
United States District Judge